IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:26-MC-00025-D

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Petitioner,<br><br>v.<br><br>GOOGLE, LLC,<br><br>Respondent. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **OPPOSITION TO PETITION TO ENFORCE CUSTOMS SUMMONS** |

## TABLE OF CONTENTS

**Page**


I. Introduction and Statement of the Case ........ 1

II. Background and Statement of the Facts ........ 2

III. Argument ........ 3

A. The Government cannot satisfy the first *Powell* factor because the Summons does not comply with the law ........ 3

1. Section 1509(a)(2), which governs the issuance of customs summonses, does not properly authorize the Summons. ........ 4

2. Section 1509(a)(1) does not apply to the Summons. ........ 6

3. Even if Section 1509(a)(1) applied, the Summons is not authorized by that provision. ........ 10

B. The Government cannot satisfy the second *Powell* factor because the records sought are not relevant to a legitimate purpose. ........ 12

C. The Government cannot satisfy the fourth *Powell* factor because it has not followed the proper administrative steps. ........ 13

D. The Court must deny the Petition and quash the summons because compliance would violate the Stored Communications Act. ........ 13

IV. Conclusion ........ 15

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Freedman v. America Online*,
325 F. Supp. 2d 638 (E.D. Va. 2004) .... 14

*Hibbs v. Winn*,
542 U.S. 88 (2004).... 10

*In re Grand Jury Subpoena Subpoena to Facebook*,
No. 16-MC-1300 (JO) 2016 WL 9274455 (E.D.N.Y. May 12, 2016) .... 15

*RNR Enters. v. SEC*,
122 F.3d 93 (2d Cir. 1997) .... 4

*Sams v. Yahoo! Inc.*,
713 F.3d 1175 (9th Cir. 2013) .... 14

*United States v Barnes*,
No. CR18-5141 BHS, 2019 WL 2515317 (W.D. Wash. June 18, 2019) .... 7

*United States v. Cray*,
673 F. Supp. 2d 1368 (S.D. Ga. 2009).... 6, 7

*United States v. Ford Motor Co.*,
516 F. Supp. 2d 770 (W.D. Tex. 2007) .... 5, 7

*United States v. Frowein*,
727 F.2d 227 (2d Cir. 1984) .... 7, 8, 9

*United States. v. Merrell*,
88 F. Supp. 3d 1017 (D. Minn. 2015).... 7

*United States v. Meyrand*,
No. 4:23CR287 HEA, 2025 WL 1282638 (E.D. Mo. May 2, 2025).... 7

*United States v. Nixon*,
130 F.4th 420 (4th Cir. 2025) .... 9

*United States v. Powell*,
379 U.S. 48 (1964).... 3

*United States v. Rainbow Rugs, Inc.*,
838 F. Supp. 11 (D. Me. 1993) .... 7

*United States v. Richards*,
631 F.2d 341 (4th Cir. 1980) .... 3, 4, 12, 13

*United States v. Rubin*,
2 F.3d 974 (9th Cir. 1993) .... 5, 6, 7

*United States v. Santos-Portillo*,
No. 7:18-CR-10-1H, 2019 WL 3047427 (E.D.N.C. May 31, 2019) .................................... 11

*United States v. Schulte*,
578 F. Supp. 3d 596 (S.D.N.Y. 2021) ................................................................................ 15

*United States v. Smajlovic*,
No. 4:23-CR-00490-SRC, 2026 WL 785026 (E.D. Mo. March 20, 2026) ............................... 7

*United States v. Tan*,
16 F.4th 1346 (9th Cir. 2021) ......................................................................................... 3, 13

*United States v. Wellbeloved-Stone*,
777 Fed.Appx. 605 (4th Cir. 2019)........................................................................................ 7

*Whitman v. American Trucking Ass'ns.*,
531 U.S. 457 (2001)............................................................................................................. 12

*Yates v. United States*,
574 U.S. 528 (2015)............................................................................................................. 11

**Statutes**

12 U.S.C. § 3414...................................................................................................................... 8

12 U.S.C. § 3486(a)(1)(c) ........................................................................................................ 8

15 U.S.C. § 1681u.................................................................................................................... 8

15 U.S.C. § 1681v.................................................................................................................... 8

18 U.S.C. § 876........................................................................................................................ 8

18 U.S.C. § 2702.............................................................................................................. 2, 13

18 U.S.C. § 2703............................................................................................................ 13, 15

18 U.S.C. § 2707.................................................................................................................... 14

18 U.S.C. § 2709...................................................................................................................... 8

19 U.S.C. § 1508...................................................................................................................... 5

19 U.S.C. § 1509............................................................................................................ passim

19 U.S.C. § 1589a............................................................................................................... 1, 8

19 U.S.C. §§ 1431–1467........................................................................................................ 12

19 U.S.C. §§ 1481–1529........................................................................................................ 12

19 U.S.C. §§ 1551–1565........................................................................................................ 12

28 U.S.C. § 533(3) .................... 8

**REGULATIONS**

19 C.F.R. § 163.7 .................... 13

28 CFR § 0.85(a) .................... 8

**OTHER AUTHORITIES**

2A N. Singer, Statutes and Statutory Construction § 46.06, pp 181–86 (rev. 6th ed. 2000) .................... 9

Black's Law Dictionary (12th ed. 2024) .................... 11

DHS OIG Cites CBP for Misuse of Summons Power, Office of Inspector General, Department of Homeland Security .................... 4, 5

Homeland Security Act of 2002, PL 107–296, Sec. 203 (2002) .................... 9

Hounding scammers with litigation, Google (Apr. 11, 2022) .................... 15

Management Alert – CBP's Use of Examination and Summons Authority Under 19 U.S.C. § 1509, Office of Inspector General, Department of Homeland Security (Nov. 16, 2017) .................... 5

Justice Department Seizes Backend Infrastructure Used by the Huione Group for Money Laundering Services, U.S. Department of Justice (June 23, 2026) .................... 14, 15

## I. Introduction and Statement of the Case

The Government is attempting to stretch a narrow customs statute—19 U.S.C. § 1509—into an all-purpose administrative subpoena power to obtain Google user records. Elder fraud is unquestionably a serious crime, but Congress has not authorized the Government to use a customs summons for general criminal investigations. And the Government has chosen not to use any of the other forms of legal process (like a grand jury subpoena) that Google would readily honor. Proceeding instead via customs summons, the Government suggests that because elder fraud is a serious crime, the Court should overlook the limited customs summons authority granted by Congress to the Department of Homeland Security ("DHS") in favor of the Government's expansive interpretation. The Court should decline the Government's invitation and deny the Petition.

Google takes elder fraud seriously. The company co-founded the National Elder Fraud Coordination Center, has partnered with the U.S. Department of Justice in numerous ways to combat elder fraud and scams generally, and has taken direct action in court to combat elder fraud schemes. But the statute at issue—19 U.S.C. § 1509—authorizes the use of a summons only to seek (1) records that are required to be kept under Section 1508 (which is not relevant here) or (2) records which the Government has probable cause to believe relate to the importation of prohibited merchandise. For this reason, Google repeatedly asked Homeland Security Investigations ("HSI")—the investigative arm of DHS that issued the present summons ("Summons")—simply to confirm that it had the requisite probable cause. HSI declined, and made no effort to provide such confirmation in its Petition.

Instead, the Government points to an unrelated statute, 19 U.S.C. § 1589a, granting HSI the authority to make certain arrests, and a different Section 1509 provision, 19 U.S.C. § 1509(a)(1), that authorizes HSI to conduct in-person examinations of importer records relevant to

a customs-related investigation or inquiry, using these sources to argue that Section 1509 grants HSI the power to issue an administrative subpoena for purposes of investigating any federal criminal offense, including all offenses within Title 18. The Court should decline to adopt that sweeping view, which would transform Section 1509 from a narrow, customs-focused provision into a sweeping grant of almost unlimited subpoena power. Instead, the Court should follow the approach taken by every court to consider the question in a Section 1510 petition, each of which has held or reinforced that the *examination* authority in Section 1509(a)(1) is distinct from the far narrower *summons* authority in Section 1509(a)(2).

Google's concern is not academic. The federal Stored Communications Act ("SCA"), 18 U.S.C. § 2702, prohibits Google from disclosing user information to a governmental entity like HSI in response to an administrative subpoena (like the Summons) unless authorized by federal law. Google simply seeks to comply with the law; it is the Government's job to get the process right.

Accordingly, the Court should deny the Petition.

## II. Background and Statement of the Facts

On March 16 and 17, Google received from HSI two summonses, issued pursuant to Section 1509, seeking Google subscriber information. Google responded by asking HSI to confirm that it had probable cause to believe the records sought related to the importation of prohibited merchandise, as required by 19 U.S.C. § 1509(a)(2). Declaration of John R. Tyler in Support of Google LLC's Opposition to Petition to Enforce a Customs Summons ("Tyler Decl."), Exhibit 1.

In April, HSI consolidated the two summonses into the present Summons. Over the next month, Google and HSI met and conferred through counsel and via email. HSI asked if Google would comply with the Summons; Google responded by asking HSI to confirm that the Summons

complied with Section 1509(a)(2). HSI did not respond directly, instead claiming that Section 1509(a)(2) did not apply. *Id.*

In July, the Deputy Chief, Civil Division for the United States Attorney's Office in the Eastern District of North Carolina informed counsel for Google that it planned to file a petition to enforce the Summons. *Id.* Counsel for Google asked again whether HSI could satisfy the standard set forth under Section 1509(a)(2), as well as if the Government would be able instead to utilize other forms of legal process (like a grand jury subpoena) that would not implicate the statutory limitations of Section 1509. *Id.* Google received no direct response, and this Petition followed. Google now opposes the Petition for the reasons below.

## III. Argument

As the Government acknowledges, it bears the burden to establish a *prima facie* showing that the Summons was issued in good faith and satisfies the four-factor *Powell* test to enforce an administrative subpoena. Pet. at 5; *United States v. Powell*, 379 U.S. 48, 57–58 (1964); *United States v. Tan*, 16 F.4th 1346, 1353 (9th Cir. 2021) (applying *Powell* test to customs summons proceeding). It has not satisfied the first, second or fourth factors of the *Powell* test because the Summons is not properly authorized by law.

### A. The Government cannot satisfy the first *Powell* factor because the Summons does not comply with the law.

Under the first prong of the *Powell* test, the Government must establish that HSI's investigation is being conducted for "a legitimate purpose." *Powell*, 379 U.S. at 57. When (as here) an agency has authority to issue a summons only for a particular purpose, "a summons issued for any purpose other than" that authorized by statute "obviously exceeds the scope of authority granted the [agency]" and therefore does not satisfy the legitimate purpose factor. *United States v.*

*Richards*, 631 F.2d 341, 345 (4th Cir. 1980). Because HSI issued the Summons without complying with the authorizing statute, 19 U.S.C. § 1509(a)(2), it cannot satisfy the legitimate purpose test.

Google does not question that certain departments and agencies of the U.S. Government can investigate criminal elder fraud. As co-founder (and current holder of a board seat) of the National Elder Fraud Coordination Center, Google consistently prioritizes efforts to combat elder fraud. Tyler Decl., Ex. 4. But by issuing a *customs summons* to Google knowing there was no probable cause to believe the records relate to the importation of prohibited merchandise, HSI acted without a legitimate purpose in the *Powell* sense of the term. *See Richards*, 631 F.2d at 345; *see also RNR Enters. v. SEC*, 122 F.3d 93, 97 (2d Cir. 1997) ("We measure the relevance of the sought-after information against the general purposes of the agency's investigation, which necessarily presupposes an inquiry into the permissible range of investigation under the statute." (cleaned up)).

**1. Section 1509(a)(2), which governs the issuance of customs summonses, does not properly authorize the Summons.**

HSI issued the Summons under 19 U.S.C. § 1509, which as written confers on the United States Customs Service certain powers to investigate potential customs violations. 19 U.S.C. § 1509(a). In relevant part, Section 1509(a) contains two distinct investigative provisions that customs officials can use in a customs-related investigation or inquiry: Section 1509(a)(1), which authorizes examinations, and Section 1509(a)(2), which authorizes the issuance of summonses. Since this is a summons, the Government must demonstrate that the Summons complied with Section 1509(a)(2). The Government has not done so.

"The summons authority under Section 1509 is limited specifically to the collection and examination of records related to the importation of merchandise, including the assessment of customs duties." Press Release, *DHS OIG Cites CBP for Misuse of Summons Power*, Office of

Inspector General, Department of Homeland Security (Nov. 16, 2017), Tyler Decl., Ex. 2. Specifically, Section 1509(a)(2) permits a customs authority to issue a summons requiring any "person he may deem proper" to "produce records, as defined in subsection (d)(1)(A)." Section 1509(d)(1)(A) defines records to mean those "required to be kept under section 1508 of this title" or "regarding which there is probable cause to believe that they pertain to merchandise the importation of which into the United States is prohibited." 19 U.S.C. § 1509(d)(1)(A). Courts have held that unlike records "relevant to an inquiry" that may be *examined* by DHS, only "records required to be kept" or that "pertain" to prohibited merchandise may be *summoned* by DHS. *United States v. Rubin*, 2 F.3d 974, 977 (9th Cir. 1993); *United States v. Ford Motor Co.*, 516 F. Supp. 2d 770, 774 (W.D. Tex. 2007) ("The records subject to an administrative summons [under Section 1509] are strictly limited to those required to be kept by law."); *see also Management Alert – CBP's Use of Examination and Summons Authority Under 19 U.S.C. § 1509*, Office of Inspector General, Department of Homeland Security (Nov. 16, 2017), Tyler Decl., Ex. 3. Google is not required to keep subscriber records pursuant to Section 1508,[1] so the only records that can be summoned from Google pursuant to Section 1509 are records "regarding which there is probable cause to believe that they pertain to merchandise the importation of which into the United States is prohibited." 19 U.S.C. § 1509(d)(1)(A)(ii).

Put together, customs authorities may only use a summons to compel Google to produce records where there is probable cause to believe those records pertain to the importation of prohibited merchandise. The Government has not met this requirement: HSI refused repeated requests from Google to confirm that HSI had probable cause to believe that the records relate to

[1] Section 1508 sets forth certain recordkeeping requirements for people who import merchandise into the customs territory of the United States, requiring those persons to retain for five years certain records related to examination and inspection of such goods. 19 U.S.C. § 1508.

the importation of prohibited merchandise. *See* Tyler Decl., Ex. 1. The Government makes no such argument in its Petition. And from a review of the Summons and Petition, Google sees no reason to believe that this Summons does, in fact, relate to prohibited imports—it relates to elder fraud. Accordingly, the Summons is not properly authorized by law.

**2. Section 1509(a)(1) does not apply to the Summons.**

The Government argues that it issued the Summons under the "examination" authority conferred by Section 1509(a)(1), but that section is irrelevant here. Section 1509(a)(1) authorizes customs authorities to "examine[] at the importer's" premises any records[2] relevant to a customs investigation or inquiry. *Rubin*, 2 F.3d at 977. It says nothing about summonses and does not authorize the issuance of a summons. The Court should reject the Government's reading, which departs from the plain text of Section 1509 delineating the process to investigate via an "examin[ation]," Section 1509(a)(1), or via a "summon[s]," Section 1509(a)(2), and would render Section 1509(a)(2) superfluous.

Courts considering this question as part of an enforcement proceeding have consistently construed Section 1509(a)(2), *not* Section 1509(a)(1), as the provision that authorizes customs authorities to issue summonses.[3] For example, the Ninth Circuit in *Rubin*, 2 F.3d at 977,

---

[2] Section 1509(a)(1) uses a different and broader definition of the word "record" than the narrow definition used by Section 1509(a)(2). For Section 1509(a)(1), the word "record …includes, but is not limited to, any statement, declaration, document, or electronically generated or machine readable data." 19 U.S.C. § 1509(a)(1).

[3] A handful of courts have rejected motions to suppress filed by defendants in criminal cases seeking to suppress evidence obtained by Section 1509 summonses issued to online platforms as part of investigations into child sexual abuse material ("CSAM"). But these cases do not help the Government for two reasons.

*First*, the core issue on a motion to suppress is whether the government violated the Fourth Amendment, *not* whether a summons is valid and enforceable, which is the question here. The Fourth Circuit has explained that, when considering a motion to suppress, courts "need not address whether [such] summonses were valid because, even if they were invalid, [people have] no reasonable expectation of privacy in [their] IP address or subscriber information, and Congress did

distinguished between records "relevant to an inquiry" that may be examined by customs authorities under Section 1509(a)(1), and "records required to be kept" or that "pertain" to prohibited merchandise that may be summoned under Section 1509(a)(2). The *Rubin* court correctly identified the latter question as the "more difficult" one. *Id.* District courts considering this issue as part of an enforcement proceeding under Section 1510 have followed suit. *See also Ford Motor Co.*, 516 F. Supp. 2d at 774 (following *Rubin*, and noting that "[t]he records subject to an administrative summons are strictly limited to those required to be kept by law"); *United States v. Rainbow Rugs, Inc.*, 838 F. Supp. 11, 14 (D. Me. 1993) (stating that "[t]he statutory language makes a distinction between documents that are 'relevant' to an investigation, and therefore open to *examination*," and those…"subject to *production*," which are not) (emphasis in original). An earlier decision from the Second Circuit explained that the "authority for the Customs Service to summon" granted by Section 1509(a)(2) is distinct from the broader "authority to examine" conferred by Section 1509(a)(1). *United States v. Frowein*, 727 F.2d 227, 232–33 (2d Cir. 1984). Thus, while Section 1509(a)(1) may permit DHS to "examine[] at the importer's" any records relevant to a customs investigation or inquiry, *Rubin*, 2 F.3d at 977, the only records DHS

---

not provide a statutory suppression remedy for information obtained in violation of Section 1509." *United States v. Wellbeloved-Stone*, 777 Fed.Appx. 605, 607 (4th Cir. 2019).

*Second*, unlike this case, these cases generally *involve* prohibited merchandise—specifically, CSAM, the importation of which into the United States is prohibited by federal law. *See* 18 U.S.C. § 2252 (prohibiting the transport or shipment into the United States of any visual depiction of a minor engaged in sexual conduct); § 2252A (prohibiting the transport or shipment into the United States of child pornography). For example, the Government relies in its Petition on *United States v. Cray*, *see* Pet. at 5, but the court in *Cray* made clear that the government in that case sought "information relevant to an investigation of the likely importation of child pornography images." *Cray*, 673 F. Supp. 2d 1368, 1377 (S.D. Ga. 2009); *see also United States v. Smajlovic*, No. 4:23-CR-00490-SRC, 2026 WL 785026 (E.D. Mo. March 20, 2026) (denying motion to suppress information obtained via a 1509 summons for purposes of a CSAM prosecution); *United States v. Meyrand*, No. 4:23CR287 HEA, 2025 WL 1282638 (E.D. Mo. May 2, 2025) (same); *United States v Barnes*, No. CR18-5141 BHS, 2019 WL 2515317 (W.D. Wash. June 18, 2019) (same); *United States. v. Merrell*, 88 F. Supp. 3d 1017 (D. Minn. 2015) (same).

can summon from Google are those DHS has probable cause to believe pertain to the importation of prohibited merchandise.

Not long ago, DHS agreed. The DHS Office of Inspector General ("OIG") stated prominently in a press release that "[t]he summons authority under Section 1509 is limited specifically to the collection and examination of records related to the importation of merchandise, including the assessment of customs duties." Tyler Decl., Ex. 2. A more comprehensive OIG report available on the same government website reflected that view as well. Tyler Decl., Ex. 3.

Now, the Government argues that because a different law lets customs officers make certain arrests "for a felony, cognizable under the laws of the United States committed outside the officer's presence if the officer has reasonable grounds to believe that the person to be arrested has committed or is committing a felony," 19 U.S.C. § 1589a(3), HSI's *summons* power reaches every federal crime. Pet. at 4. But when HSI chooses to use a customs summons, it must do so only as permitted by the statute—just as other agencies, including the Federal Bureau of Investigation, can use administrative subpoenas only for the narrow purposes set forth by the authorizing statute. And it is not unusual for an agency's administrative subpoena authority to be narrower than other powers. The Federal Bureau of Investigation, for example, can investigate violations of federal law broadly. *See* 28 CFR § 0.85(a); 28 U.S.C. § 533(3). But its limited administrative subpoena power reaches only certain matters, such as those involving child exploitation, 12 U.S.C. § 3486(a)(1)(c), controlled substances, 18 U.S.C. § 876, and national security, *see, e.g.*, 12 U.S.C. § 3414, 15 U.S.C. § 1681u, 15 U.S.C. § 1681v, 18 U.S.C. § 2709.

Moreover, the summons authority contained within Section 1509 has always been narrow. It was originally even narrower: When first enacted, "the authority of customs officials to summon records was limited to inquiries about importations made during the preceding year or unliquidated

entries." *Frowein*, 727 F.2d at 234. In 1978, it was expanded to permit customs officials to investigate more broadly, but only to "summon upon reasonable notice specified persons and require such persons 'to produce records, required to be kept under section 1508 of this title.'" *Id.* at 233. Summons authority was expanded again in 1986 to permit officials also to summon records "regarding which there is probable cause to believe that they pertain to merchandise the importation of which into the United States is prohibited." Pub. L. 99-570, Title III, § 3117, Oct. 27, 1986; 19 U.S.C. § 1509(a)(2). But at no point did Congress amend Section 1509 to authorize the use of a customs summons to investigate every criminal offense set forth in Title 18, as the Government appears to assert here. *See* Pet. at 4. And while Congress transferred to DHS the customs powers previously enjoyed by the Department of the Treasury, Pet. at 4, it does not follow from that transfer that the entire investigative and enforcement purview of DHS was absorbed into the narrow summons authority granted by Section 1509. Congress could have expanded the text of Section 1509 to authorize the use of a customs summons for anything within DHS' power, but it did not. Homeland Security Act of 2002, PL 107–296, Sec. 203 (2002); *see United States v. Nixon*, 130 F.4th 420, 431 (4th Cir. 2025) ("[W]here a law expressly describes a particular situation to which it shall apply, what was omitted or excluded was intended to be omitted or excluded.") (cleaned up). Instead, Congress left Section 1509(a)(2) effectively the same. 19 U.S.C. § 1509.

The Government's contrary reading not only ignores the statute's structure and goes against the above authority, but would also lead to an untenable result: If HSI could conscript any entity it pleased—Google included—into producing whatever records it deemed relevant to any inquiry or investigation into any violation of federal criminal law, *see* Pet. at 4, there would be no reason for HSI ever to utilize the more restrictive authorities set forth in Section 1509(a)(2). The Court should reject the Government's invitation to construe federal law in a way that renders

Section 1509(a)(2) superfluous. *See Hibbs v. Winn*, 542 U.S. 88, 101 (2004) ("A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant" (quoting 2A N. Singer, Statutes and Statutory Construction § 46.06, pp 181–86 (rev. 6th ed. 2000))).

**3. Even if Section 1509(a)(1) applied, the Summons is not authorized by that provision.**

Even if the Government were correct that Section 1509(a)(1) silently confers summons authority (which it does not, for the reasons stated above), the Government still cannot satisfy the first *Powell* factor because elder fraud is not a customs-related "investigation or inquiry" covered by Section 1509.

The Government can utilize the tools set forth in Section 1509(a) only for certain types of investigations or inquiries. Specifically, Section 1509(a) allows customs officials to conduct examinations or issue summonses only "[i]n any investigation or inquiry conducted for the purpose of ascertaining the correctness of any entry, for determining the liability of any person for duty, fees and taxes due or duties, fees and taxes which may be due the United States, for determining liability for fines and penalties, or for insuring compliance with the laws of the United States administered by the United States Customs Service[.]" Here, the Government relies on the final, catchall clause permitting officials to use these tools "for insuring [sic] compliance with the laws of the United States administered by the United States Customs Service." 19 U.S.C. § 1509(a). But the Government makes no effort to argue that elder fraud is within the scope of "laws of the United States administered by the United States Customs Service," because it is not. Instead, the Government argues that HSI has broad authority to make arrests as set forth in Section 1589a;[4]

[4] Notably, Section 1589a is not as broad as the Government claims, as "the statute's introductory clause — 'subject to the direction of the Secretary' — [] limits the warrantless arrest authority of

recasts the clause "administered by the United States Customs Service" as "administered by HSI," Pet. at 4; and construes that phrase to mean, effectively, any United States law for which HSI has any investigative or enforcement authority, even when that authority is itself narrow and limited to circumstances not present here. The Court should reject this sweeping argument.

The power of a customs official to conduct a warrantless arrest based on reasonable cause and subject to the direction of the DHS Secretary does not expand "the laws of the United States *administered* by the United States Customs Service" to mean every federal criminal law. 19 U.S.C. § 1509(a)(1) (emphasis added). "Administer" means, in relevant part, "to manage (work or money) for a business or organization" or "[t]o provide or arrange (something) officially as part of one's job." *Administer*, Black's Law Dictionary (12th ed. 2024). Nothing in Section 1589a (or Section 1509) states that the United States Customs Service "manages" all federal criminal laws, nor that it "provides" or "arranges" for such laws officially. Rather than look to an unrelated law that says nothing about the authority to issue a summons pursuant to Section 1509, the Court should instead look to the plain text of the statute and construe "the laws of the United States administered by the Customs Service" consistent with the canon of *ejusdem generis. See Yates v. United States*, 574 U.S. 528, 545 (2015) ("[W]here general words follow specific words" in a statute, the general words "embrace only objects similar in nature to those objects enumerated by the preceding specific words.") Here, that would limit the catchall clause to laws "similar in nature" to those regarding "ascertaining the correctness of any entry," to "dut[ies], fee[s] and taxes due or duties, fees and taxes which may be due the United States," and "for determining liability for fines and penalties." The statutory structure confirms this view: Subtitle III of Chapter 4 of Title 19, in which

customs officers." *United States v. Santos-Portillo*, No. 7:18-CR-10-1H, 2019 WL 3047427, at *5 (E.D.N.C. May 31, 2019).

Sections 1589a and 1509 are both located, is titled "Administrative Provisions" and provides customs officials with administrative authority over things like reporting, entry, and unlading of vessels and vehicles; *see* 19 U.S.C. §§ 1431–1467; ascertainment, collection, and recovery of duties; *see* 19 U.S.C. §§ 1481–1529; and transportation in bond and warehousing of merchandise, *see* 19 U.S.C. §§ 1551–1565. In other words, the summons authority conferred by Section 1509 is limited to customs-related laws concerning imported merchandise, duties, fees, and taxes.

When Congress transferred to DHS the responsibilities of the former Customs Service, it did not amend Section 1509 to cover every law for which every DHS official has investigative or enforcement authority. It simply transferred to the newly-created DHS the ability to investigate customs violations, and to use preexisting tools for customs-related purposes, without expanding the scope of those customs-specific tools to reach unrelated and unanticipated purposes. A contrary reading would lead to absurd results: it would allow DHS to use a narrow customs tool to conduct examinations and issue administrative subpoenas to obtain any information relevant to any violation of any federal criminal law, a sweeping subpoena power that would exceed that of all other federal law enforcement agencies. As Congress "does not, one might say, hide elephants in mouseholes," *Whitman v. American Trucking Ass'ns.*, 531 U.S. 457, 468 (2001), the Court should decline to adopt that view and deny the Petition.

### B. The Government cannot satisfy the second *Powell* factor because the records sought are not relevant to a legitimate purpose.

The second *Powell* factor requires the Government to show that its "inquiry may be relevant to" a legitimate purpose. *Richards*, 631 F.2d at 344. The Government fails to satisfy this prong for the same reason as above: federal law does not authorize the issuance of a customs summons for purposes of a criminal elder fraud investigation. The Government makes no effort to demonstrate that the records sought are "relevant" to the importation of prohibited merchandise

(let alone that probable cause exists), as required by 19 U.S.C. § 1509(a)(2). Nor has the Government established that the records sought are relevant to an "inquiry" conducted for purposes of ensuring compliance "with the laws of the United States administered by the United States Customs Service." 19 U.S.C. § 1509(a).

### C. The Government cannot satisfy the fourth *Powell* factor because it has not followed the proper administrative steps.

The fourth *Powell* factor requires the Government to make a *prima facie* showing "that the proper administrative procedures have been followed." *Richards*, 631 F.2d at 344. Courts considering this factor often focus on compliance with regulatory requirements. *See Tan*, 16 F.4th at 1353 (requiring the government to demonstrate that "Customs complied with each of the procedural requirements of 19 U.S.C. § 1509(c) and 19 C.F.R. § 163.7"). In this case, the Government misstates the relevant procedural rules, focusing erroneously on the administrative steps associated with examinations conducted under Section 1509(a)(1). Because this is a summons, however, the Government was required to comply with the applicable procedural rules set forth in 19 U.S.C. § 1509(a)(2) and 1509(d). Having made no attempt to address those requirements, the Government has not made a *prima facie* showing that it satisfied these requirements and therefore it fails to satisfy the fourth *Powell* factor as well.

### D. The Court must deny the Petition and quash the summons because compliance would violate the Stored Communications Act.

Finally, Section 2702 of the SCA prohibits covered providers like Google from disclosing to a governmental entity any information about a customer without legal authorization. *See* 18 U.S.C. § 2702(a)(1)–(3). The Government can overcome this prohibition by using one of the compulsory legal process mechanisms set forth in 18 U.S.C. § 2703. When the Government seeks information pursuant to an administrative subpoena, such subpoena must be "authorized by Federal or State statute." *Id.*, § 2703(c)(2). If the subpoena is *not* authorized by federal or state

statute, however, disclosure is not authorized by Section 2703 and is prohibited by Section 2702. While Section 2707 of the SCA contains an affirmative defense for disclosures made in good faith reliance on a "statutory authorization," *Id.*, § 2707, that defense may require Google to show that it subjectively believes in good faith that the statute authorizes the disclosure sought, and that its belief is objectively reasonable. *See Freedman v. America Online*, 325 F. Supp. 2d 638, 648 (E.D. Va. 2004). At a minimum, the defense is not available where a provider "actually knew" that an administrative subpoena was defective. *Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1181 (9th Cir. 2013).

Here, Google "actually knows" that the Summons is defective and not authorized by statute. Every court considering an enforcement proceeding under Section 1510 has held or reinforced that a customs summons is issued under Section 1509(a)(2), not (a)(1). DHS OIG confirmed it shares this view in a prominent report and press release. Google has repeatedly asked HSI to confirm that it complied with Section 1509(a)(2) in issuing the Summons and HSI has refused to do so. And the Petition ignores Section 1509(a)(2) entirely, tacitly conceding that the required probable cause does not exist. If Google complies with the Summons on these facts, it risks acting outside Section 2707's safe harbor and violating federal law. *See Sams*, 713 F.3d at 1181. Accordingly, the Court should deny the Petition because complying with the Summons would force Google to risk violating the SCA.

*        *        *        *

Google recognizes the importance of combatting criminal elder fraud, and its contributions in this space have led to tangible results: In June, the Department of Justice publicly thanked "Google's CyberCrime Investigation Team for voluntarily providing valuable information" that led to the seizure of backend infrastructure used by a Cambodia-based corporate conglomerate engaged in cryptocurrency investment frauds, cyber scams and related criminal activities. Press

Release, *Justice Department Seizes Backend Infrastructure Used by the Huione Group for Money Laundering Services*, U.S. Department of Justice (June 23, 2026), Tyler Decl., Ex. 5.[5] Google also responds regularly to valid search warrants, court orders, and subpoenas seeking information for all purposes, including for investigating criminal elder fraud.

But Google cannot comply with legal process that does not comply with the law, such as the Summons in this case. Thankfully, there are other federal subpoena powers available when the Government investigates federal criminal offenses like elder fraud. Agencies investigating federal crimes frequently rely on grand jury subpoenas to obtain records from providers like Google. *See, e.g.*, *United States v. Schulte*, 578 F. Supp. 3d 596, 607 (S.D.N.Y. 2021) (issuing subpoenas on Google, Twitter, Facebook, Reddit, Apple, and Microsoft); *In re Grand Jury Subpoena Subpoena to Facebook*, No. 16-MC-1300 (JO) 2016 WL 9274455, at *2–3 (E.D.N.Y. May 12, 2016) (issuing subpoena on Facebook). Or, in appropriate cases, agencies can obtain court orders or search warrants issued pursuant to the SCA. *See* 18 U.S.C. § 2703. The Government has declined to consider those alternatives here, *see* Tyler Decl., Ex. 1, but denying the Petition will not prevent the Government from seeking basic subscriber information from Google in cases like this. It will simply prevent HSI from using the narrow customs summons power contained within Section 1509(a)(2) to seek records from Google absent probable cause to believe those records relate to the importation of prohibited merchandise.

## IV. Conclusion

For these reasons, Google respectfully requests that the Court deny the Petition.

[5] Google has also taken direct action: in 2022, for example, Google filed a consumer protection lawsuit in federal court against puppy fraud scammers targeting the elderly. *See Hounding scammers with litigation*, Google (Apr. 11, 2022), Tyler Decl., Ex. 6.

DATED this 17th day of August, 2026 By: */s/ John R. Tyler*

John R. Tyler, WA State Bar No. 42097
Sarah Grant, WA State Bar No. 63879
Anna Thompson-Lanners, WA State Bar No. 61679
ASHURST PERKINS COIE US LLP
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-30804
Telephone: 206.359.8000
Facsimile: 206.359.9000
randy.tyler@ashurstperkins.com
sarah.grant@ashurstperkins.com
anna.thompsonlanners@ashurstperkins.com

Alan Garza, CA State Bar No. 348511
ASHURST PERKINS COIE US LLP
405 Colorado Street, Suite 17
Austin, Texas 78701-0089
Telephone: 737.256.6100
Facsimile: 737.256.6300
alfredoalan.garza@ashurstperkins.com

*/s/ Caroline M. Mew*

Caroline M. Mew, Bar No. 26454
ASHURST PERKINS COIE US LLP
700 13th Street, NW Suite 800
Washington, DC 20005-3960
Telephone: 202.654.6200
Facsimile: 202.654.6211
caroline.mew@ashurstperkins.com
Local Civil Rule 83.1(d) Attorney

*Attorneys for Respondent Google LLC*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:26-MC-00025-D

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Petitioner,<br><br>v.<br><br>GOOGLE, LLC,<br><br>Respondent. | **CERTIFICATE OF SERVICE** |

I hereby certify that on August 17, 2026, I electronically filed the foregoing Opposition to Petition to Enforce Customs Summons and the Declaration and Exhibits filed in support thereof with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Katherine A. King
DOJ-USAO
Eastern District of North Carolina
150 Fayetteville St, Suite 2100
Raleigh, NC 27601
(919) 856-4530
Email: katie.king@usdoj.gov
*Attorney for Petitioner United States of America*

Respectfully Submitted,

*/s/ John R. Tyler*
John R. Tyler, WA State Bar No. 42097
ASHURST PERKINS COIE US LLP
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-30804
Telephone: 206.359.8000
Facsimile: 206.359.9000
randy.tyler@ashurstperkins.com
*Attorney for Respondent Google LLC*