IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:26-MC-00025-D

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Petitioner,<br><br>v.<br><br>GOOGLE, LLC,<br><br>Respondent. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | REPLY TO RESPONDENT'S OPPOSITION TO PETITION TO ENFORCE A CUSTOMS SUMMONS |

Petitioner, the United States of America, respectfully replies to Respondent's Opposition to Petition to Enforce Customs Summons [D.E. 14]. The opposition rests on two errors. First, it reads 19 U.S.C. § 1509 to confine the summons power to subsection (a)(2)—a construction the statute's text and structure cannot bear. Second, it treats the customs investigative authority Congress transferred to the Department of Homeland Security ("DHS") as though it were limited to the border inspection functions of U.S. Customs and Border Protection. It is not. Congress transferred the criminal-*investigative* functions of the former U.S. Customs Service to DHS, and those functions—now administered by Homeland Security Investigations ("HSI")—reach the transnational fraud and money laundering under investigation here.[1] Respondent's attempt to confine Section 1509 to "customs-related laws concerning

[1] Respondent repeatedly characterizes the investigation merely as "elder fraud." [D.E. 14 at 1, 4, 6, 10, 12, 14, 15]. The record describes a "multi-stage wire fraud scheme involving international financial transactions and suspected foreign perpetrators," [D.E. 1], implicating at least 18 U.S.C. §§ 1343 and 1956(a)(2). *See* Declaration of Special Agent Cremeens [D.E. 2].

imported merchandise, duties, fees, and taxes" ignores the distinctions Congress drew within Section 1509 itself and the breadth of HSI's mission.[2] The Court should reject that construction, hold that the Government satisfied its minimal *prima facie* burden under *United States v. Powell*, 379 U.S. 48 (1964), and enforce Summons 51540.

## I. ***HSI Properly Issued Summons 51540 Under 19 U.S.C. § 1509(a)(1), and Respondent's Narrow Construction Conflicts with the Statute's Text and Structure.***

### A. Summons 51540 Is a Records Summons Authorized by 19 U.S.C. § 1509(a)(1), Not (a)(2).

Section 1509(a) authorizes three distinct forms of process. Paragraph (a)(1) authorizes the Secretary to examine, or cause to be examined, *records*; paragraph (a)(2) authorizes him to summon *persons* to appear, produce records, and give testimony; and paragraph (a)(3) authorizes him to take *testimony* under oath. 19 U.S.C. § 1509(a)(1)–(3). Each is governed by subsection (a)'s overarching "authority" paragraph.

HSI sought records here—not an appearance, and not testimony. Its authority is therefore governed by (a)(1). The relevant text provides:

> **(a)** Authority
>
> In any investigation or inquiry conducted for the purpose of . . . ***insuring compliance with the laws of the United States administered by the United States Customs Service***, the Secretary . . . may--
>
> > **(1)** examine, or cause to be examined, upon reasonable notice, any record (which for purposes of this section, includes, but is not limited to, any

[2] HSI's mission includes combatting financial fraud, transnational organized crime, and transnational elder fraud. *See, e.g.*, *ICE Investigation Leads to Indictment of 8 Individuals with ties to China in Transnational Elder Fraud Scheme*, ICE Newsroom (May 23, 2025).

> statement, declaration, document, or electronically generated or machine readable data) described in the notice with reasonable specificity, ***which may be relevant to such investigation or inquiry*** . . .

19 U.S.C. § 1509 (emphasis added).

Two features of that text confirm that Summons 51540 rests on (a)(1). First, (a)(1) does not merely permit the Secretary to examine records himself; it permits him to "cause to be examined" any record described with reasonable specificity. Records held by a third party cannot be caused to be examined by request alone. The phrase presupposes an instrument compelling the custodian to produce them, and the customs summons is that instrument. Respondent's reading would strip "or cause to be examined" of independent work. *See TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (statutes are construed so that no word is "superfluous, void, or insignificant").

Second, (a)(2) does not fit. A summons under (a)(2) commands a person to appear before a customs officer at a specified time and place, to produce records "as defined in subsection (d)(1)(A)," and "to give such testimony, under oath." 19 U.S.C. § 1509(a)(2). Summons 51540 does none of that: it directs no Google employee to appear and seeks no testimony.

The two paragraphs also reach different records. Paragraph (a)(1) supplies its own definition, which operates "for purposes of this section" and expressly reaches "electronically generated or machine readable data." Paragraph (a)(2) is confined to "records, as defined in subsection (d)(1)(A)"—a definition operating only "[f]or purposes of this subsection [(d)(1)(A)]" and reaching only records kept under 19 U.S.C. § 1508 and records pertaining to prohibited merchandise. Where Congress includes

language in one provision and omits it in another, the disparity is presumed deliberate. *Russello v. United States*, 464 U.S. 16, 23 (1983). Respondent's construction would import (a)(2)'s limitation into (a)(1) and read "electronically generated or machine readable data" out of the statute—though those are the very records at issue.

Respondent's contrary assertion is mistaken. Congress's use of "examine" in (a)(1) and "summon" in (a)(2) creates separate but complementary powers, and the Ninth Circuit has read the statute the same way. In *United States v. Tan*, the court explained that "Congress requires two things when Customs *summons* the production of records: 'reasonable notice' of the examination of records and 'reasonable specificity' in the description of the records sought"—citing Section 1509(a)(1), not (a)(2), as the source of both. 16 F.4th 1346, 1350 (9th Cir. 2021) (citing 19 U.S.C. § 1509(a)(1)). The court added that "reasonable specificity" "is found only in §§ 1509(a)(1) and 1509(c)." *Id.* at 1350–51. *Tan* thus locates the records-summons authority precisely where the Government does.

**B. The Remainder of Section 1509 Confirms That a Records Summons Issues Under Subsection (a)(1).**

Subsection (d)(1)(B) confirms the point. It defines the operative term for the entire third-party summons regime: "The term 'summons' means *any summons issued under subsection (a) of this section* which requires the production of records *or* the giving of testimony relating to records." 19 U.S.C. § 1509(d)(1)(B) (emphasis added). Congress wrote "subsection (a)"—not "paragraph (a)(2)"—though it pinpointed individual paragraphs elsewhere in the same section. *See id.* § 1509(a)(2),

(e), (g)(1)–(2). Thus Congress expressly contemplated a summons requiring the production of records and nothing more. That is what Summons 51540 is, and (a)(1) is where that authority resides.

Subsection (c) points the same way. It governs service of "[a] summons issued pursuant to *this section*"—again the broadest available unit. 19 U.S.C. § 1509(c) (emphasis added). Respondent offers no reason why Congress would enact a section-wide service provision if only one paragraph could generate a summons. Subsection (c)'s closing sentence removes any doubt: "When the summons requires the production of records, such records shall be described in the summons with reasonable specificity." *Id.* That is (a)(1)'s language. "Reasonable specificity" appears nowhere in (a)(2). *See Tan*, 16 F.4th at 1350–51.

Subsection (d)(6) is explicit. It bars any "*examination* of any records required to be produced under a *summons*" as to which notice is required, absent expiration of the stay period or a court order. 19 U.S.C. § 1509(d)(6) (emphasis added). Congress there used the summons instrument and the (a)(1) verb in one sentence to describe a single act: records produced under a summons and then examined. Subsection (d)(2) does the same. Respondent's construction requires treating "examination" under (a)(1) and "summons" under (a)(2) as sealed off from one another. Read together, subsections (c), (d)(1)(B), (d)(2), and (d)(6) describe one scheme, and Respondent's reading cannot account for any of them.

### C. Respondent's Narrow Reading of Section 1509 is Contrary to the Statutory Text and Case Law.

To fall within Section 1509, then, a records summons must "be relevant" to an investigation "for insuring compliance with the laws of the United States administered by" HSI. This one plainly is.

The statute lists four permissible purposes in the disjunctive: ascertaining the correctness of any entry; determining liability for duties, fees, and taxes; determining liability for fines and penalties; <u>or</u> insuring compliance with the laws administered by the Customs Service. 19 U.S.C. § 1509(a).

Respondent's assertion that Section 1509 reaches only a customs-related "investigation or inquiry" is unavailing. To adopt it, the Court would have to ignore the prefatory words "[i]n any," which modify "investigation or inquiry." *See Hibbs v. Winn*, 542 U.S. 88, 101 (2004) (statutory language must be read in context). Respondent likewise reads "administered" in isolation. Courts have rejected that argument. *See United States v. Cray*, 673 F. Supp. 2d 1368, 1376 (S.D. Ga. 2009) (rejecting argument that customs summonses "are supposed to be used for administrative purpose related to trade"); *United States v. Smajlovic*, No. 4:23-CR-00490-SRC, 2026 WL 785026, at *2 (E.D. Mo. Mar. 20, 2026) (rejecting argument that "administer" excludes child pornography because HSI "merely investigate[s]" it); *United States v. Barnes*, No. CR18-5141 BHS, 2019 WL 2515317, at *5-6 (W.D. Wash. June 18, 2019), *aff'd*, 2021 WL 4938126 (9th Cir. Oct. 22, 2021) (rejecting argument that Section 1509 may be used only to enforce customs laws). Respondent distinguishes those decisions as criminal cases, but the statutory question—what

Section 1509 authorizes—is the same whether the remedy sought is suppression or enforcement.

Respondent acknowledges that Congress transferred the legacy Customs Service's powers to DHS, *see* Op. Memo at 9, yet asserts—without authority—that "it does not follow from that transfer that the entire investigative and enforcement purview of DHS was absorbed into the narrow summons authority granted by Section 1509." *Id.* That is precisely what the transfer accomplished. *See* 6 U.S.C. § 203(1) (transferring "the functions, personnel, assets, and liabilities of the United States Customs Service of the Department of the Treasury"); *see also* DHS Delegation No. 7030.2 § 2(A) (Nov. 13, 2004). Had Congress meant to withhold part of that authority, it knew how to say so. *Cf.* 6 U.S.C. § 212 (retaining customs revenue functions in Treasury).

Respondent's authorities do not help it. *United States v. Rubin*, 2 F.3d 974 (9th Cir. 1993), involved a pre-DHS Customs Service summons in the entry-records context; the court remanded to determine whether the records sought "are required to be kept under § 1508" and so reachable under (a)(2). *Id.* at 977. It did not hold (a)(2) the exclusive source of summons authority. *Tan* confirms as much, describing *Rubin* as pertaining to "enforcement of a summons seeking records." 16 F.4th at 1350–51. *United States v. Ford Motor Co.* likewise turned on the classification of records under § 1509(a)(1)(A), which is not at issue here. 516 F. Supp. 2d 770, 775–76 (W.D. Tex. 2007).

Finally, the DHS Office of Inspector General management alert on which Respondent relies does not define, much less limit, HSI's summons authority. An internal alert carries no legal force, and this one addressed the use of Section 1509 by CBP's Office of Professional Responsibility—CBP's internal affairs division. It says nothing about summonses issued outside that context and makes no mention of ICE or HSI, whose special agents are conducting this investigation.

## II. The Government Satisfied the *Powell* Factors and Enforcement of the Customs Summons is Proper.

The Government established its *prima facie* case in the Petition, and review is deferential; the discussion here is accordingly brief. The Government must show a legitimate purpose, relevance, that it does not already possess the information, and compliance with the required administrative steps. *Powell*, 379 U.S. at 57–58; *Tan*, 16 F.4th at 1353 (applying *Powell* to a Title 19 administrative summons). That showing may be made by the declaration of the investigating agent, and once made, the recipient bears a "heavy burden" to disprove it. *Id.* at 1352–53. The Declaration of Special Agent Cremeens supplies each element. *See* [D.E. 2] at 5–6. Respondent does not contest the third factor.

Respondent challenges only relevance and the administrative steps. *See* Op. Memo at 12–13. Both arguments depend on its reading of Section 1509(a)(1) and fail with it. As to relevance, Respondent never addresses the governing standard: whether the Government has shown a "realistic expectation rather than an idle hope that something may be discovered." *United States v. Richards*, 631 F.2d 341, 345 (4th Cir. 1980). The Petition and the Declaration make that showing. *See* Petition at 7–8.

Respondent cites no authority for its position that the steps in 19 U.S.C. § 1509(c) do not apply to a summons issued under (a)(1). The statute prescribes those steps for "[a] summons issued pursuant to this section." *Id.* § 1509(c). Respondent's reliance on Section 1509(d) fails for a simpler reason: those procedures apply only to a "third-party recordkeeper," defined as a customhouse broker, attorney, or accountant. 19 U.S.C. § 1509(d)(1)(C). Google is none of these. *See Tan*, 16 F.4th at 1350 n.2. HSI complied with § 1509(c), as described in the Petition and certified in the Declaration of Special Agent Cremeens. *See* Petition at 8–9; [D.E. X].

## III. <u>Compliance with Summons 51540 Would Not Violate the Stored Communications Act ("SCA").</u>

Respondent's SCA argument reduces to a single premise: that a customs summons issued under 19 U.S.C. § 1509 is not "an administrative subpoena authorized by a Federal or State statute" under 18 U.S.C. § 2703(c)(2). *See* Op. Memo at 13–14. That premise is wrong.

Section 2703(c)(2) permits a provider of electronic communication service or remote computing service—which Respondent is—to disclose the basic subscriber information enumerated in § 2703(c)(2)(A)–(F) "when the governmental entity uses an administrative subpoena authorized by a Federal or State statute." The requirements are functional: the process must be administrative, and it must be statutorily authorized.

A Section 1509 summons is both. It issues from an executive agency official—no delegate "below the rank of district director or special agent in charge," 19 U.S.C. § 1509(a)—without prior judicial approval, and it is not self-executing: if the recipient

declines, the Government's only recourse is to petition a district court. *See* 19 U.S.C. § 1510. That bifurcation of issuance and enforcement is the defining feature of an administrative subpoena, and it is what protects the recipient.

The "summons" label changes nothing. Congress uses the two terms interchangeably for agency process. *See* 12 U.S.C. § 3405 ("Administrative subpoena and summons") (permitting a government authority to obtain financial records "pursuant to an administrative subpoena or summons otherwise authorized by law"). The Internal Revenue Service's process is likewise styled a "summons," 26 U.S.C. § 7602, yet no one doubts it is an administrative subpoena; *Powell* itself arose from one.

The courts agree. *Tan* described the Section 1509 instrument as an "administrative summons" and applied *Powell*—the framework governing administrative subpoenas—to its enforcement. 16 F.4th at 1353; *see also United States v. Frowein*, 727 F.2d 227 (2d Cir. 1984). *Tan* also recounts the Commissioner of Customs' testimony on the amendments that produced this text: "Importers will, under the administrative subpoena provided for in section 509, be specifically advised of the information sought from them." *Id.* at 1351–52.

In all events, Respondent faces no exposure. The SCA bars any cause of action against a provider for disclosing information "in accordance with the terms of a court order, warrant, subpoena, statutory authorization, or certification under this chapter." 18 U.S.C. § 2703(e); *see also id.* § 2707(e). Once this Court orders enforcement, Respondent will act under a court order, and § 2703(e) protects it on

that basis alone. The SCA is a shield for providers who disclose under lawful process, not a sword with which to defeat the process itself.

## IV. Conclusion

For the reasons provided above as well as those submitted in the Petition, the Government requests that this Court grant the Petition and order the Respondent to comply with the Summons issued forthwith.

Respectfully submitted, this 8th day of September, 2026.

W. ELLIS BOYLE
Acting United States Attorney

BY: /s/ *Katherine A. King*
KATHERINE A. KING
Assistant United States Attorney
Eastern District of North Carolina
150 Fayetteville Street, Suite 2100
Raleigh, NC 27601
Telephone: (919) 856-4849
Email: katie.king@usdoj.gov
NC Bar # 44525

*Attorney for the United States*

## CERTIFICATE OF SERVICE

I do hereby certify that I have this 8th day of September, 2026, served a copy of this document upon the below-listed party by electronically filing it with the Court using the CM/ECF system or placing a copy in the United States Mail to the following:

**Alfredo Alan Garza**
Ashurst Perkins Coie US LLP
Email: alfredoalan.garza@ashurstperkins.com

**Anna Thompson-Lanners**
Ashurst Perkins Coie US LLP
anna.thompsonlanners@ashurstperkins.com

**Caroline Mew**
Ashurst Perkins Coie US LLP
caroline.mew@ashurstperkins.com

**John Randall Tyler**
Ashurst Perkins Coie US LLP
randy.tyler@ashurstperkins.com

**Sarah Grant**
Ashurst Perkins Coie US LLP
sarah.grant@ashurstperkins.com

*Attorneys for Google, LLC*

/s/ *Katherine A. King*
KATHERINE A. KING
Assistant United States Attorney

**Word Count Certification Pursuant to Local Civil Rule 7.2(f)(3)**

Pursuant to Local Civil Rule 7.2(f)(3) of the United States District Court for the Eastern District of North Carolina, the undersigned counsel for the United States hereby certifies that the accompanying Reply complies with the applicable word count limitations.

1. According to the word count feature of the word processing software used to prepare the memorandum (Microsoft Word), the total number of words in the memorandum—including the body of the brief, headings, and footnotes, but excluding the caption, signature lines, and certificate of service—is 2,659 words.
2. This word count complies with the limit set forth under Local Civil Rule 7.2(f)(3), which mandates that a reply shall not exceed 2,800 words.

/s/ *Katherine A. King*
KATHERINE A. KING
Assistant United States Attorney